# Staunton.

## SHOFFNER V. SUTHERLAND AND OTHERS.

### September 15, 1910.

### Absent, Cardwell, J.

1. WATERS AND WATER COURSES—*Pollution—Nuisance—Remedy.*—The natural pollution of water in its flow through populous regions of country cannot ordinarily be restrained. But any use of a stream that materially fouls and adulterates the water, or the deposit or discharge therein of any filth or noxious substance that so far affects the water as to impair its value for the ordinary purposes of life, or anything that renders the water less wholesome than in its natural state, or which renders it offensive to taste or smell, or which is naturally calculated to excite disgust in those using the water for the ordinary purposes of life, constitutes a nuisance which courts of equity will enjoin at the instance of a lower riparian owner injured thereby.

2. APPEAL AND ERROR—*Question for First Time.*—One who sues as a riparian owner and was treated as such in the trial court will be so considered in this court, in the absence of any evidence on the subject, when no such question was raised by the pleadings in the cause.

3. WATERS AND WATER COURSES—*Pollution—Sawdust—Nuisances—Rights of Riparian Owners.*—Casting sawdust into a stream which is deposited in and along the stream as it flows, and in nearby springs, which discolors the water and oftimes gives it an offensive odor, and renders it less fit for domestic purposes, and unwholesome, frequently causing disease along the streams into which it is carried, is a nuisance, and will be enjoined at the instance of a lower riparian owner.

4. RIGHTS—*Remedy.*—Every citizen is entitled to a remedy for the wrongs he may sustain, even though they be inflicted by forces which constitute factors in the material development and growth of the community.

Appeal from the Circuit Court of Dickenson county. Decree for the complainants. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Vicars & Peery*, R. E. *Chase* and *A. A. Skeen*, for the appellant.

*Sutherland & Sutherland*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This is a suit brought by lower riparian land owners to restrain a sawmill operator higher up the stream from casting into the stream sawdust and other substances which it is alleged polluted the water and rendered it unwholesome and unfit for domestic purposes.

The relative rights of an upper and lower riparian owner were carefully considered by the court in the recent case of *Trevett* v. *Prison Association*, 98 Va. 332, 46 S. E. 373, 81 Am. St. Rep. 727, 50 L. R. A. 564, and the conclusion reached, as correctly stated in the syllabus of the case, that "the natural pollution of water in its flow through populous regions of country cannot ordinarily be restrained. But any use of a stream that materially fouls and adulterates the water, or the deposit or discharge therein of any filth or noxious substance that so far affects the water as to impair its value for the ordinary purposes of life; or anything which renders the water less wholesome than when in its ordinary state, or which renders it offensive to taste or smell, or which is naturally calculated to excite disgust in those using the water for the ordinary purposes of life, will constitute a nuisance which courts of equity will enjoin, or for which a lower riparian owner injured thereby is entitled to redress."

It is insisted by the appellees' counsel in argument that the appellant was not a riparian owner, and therefore did not have the rights of such an owner. Whether he was or not does not appear, and as no such question was raised in the pleadings this court will consider the case as if he were a riparian owner, as seems to have been done in the trial court.

It is a conceded fact in the case that the appellant was operating a sawmill on said stream and had been for some months, and that, except during the dry season, he did cast sawdust from his mill into the stream. The appellant seeks to justify such use of the stream on the ground that he was almost entirely engaged in sawing poplar lumber upon his mill which was a band mill; that sawdust from poplar cut on a band mill is very light, floats readily upon the water and is carried down the creek into larger streams, and could not from the character and rapidity of the stream damage anyone by lodging or sinking therein; and that even if it were deposited in and along the stream, which is denied, it is not a noxious or unwholesome substance, and did not pollute the stream or render it less valuable for domestic purposes.

The contention of the appellees, on the other hand, is that all the sawdust did not float into other streams but was deposited in quantities in and along the stream, and in times of high water was backed and deposited in springs near the stream, thereby discoloring the water, causing it to have an offensive odor, impairing its value for domestic purposes and rendering it unwholesome, offensive and injuriously affecting the health of the people dwelling along the stream.

The evidence is conflicting, but it clearly preponderates in favor of the appellees' contention. The weight of evidence not only shows that sawdust was deposited in and along the stream on which the sawmill was located and in springs near to the stream, but that these deposits discolored the water; that in warm weather the decaying sawdust gave the water an offensive odor; that stock in some instances refused to

drink it; that it was less fit for domestic purposes, was unwholesome, and in the opinion of physicians decaying sawdust deposits affected the purity of the water and were frequently if not generally the cause of disease along the streams in which the deposits were found.

It is insisted by the appellant's counsel that restraining sawmill operators from casting sawdust into the streams along which they are operating will be very hurtful to the vast lumber interests of the southwestern part of the State and will hinder the development of that great source of wealth.

"It would," as was said in *Townsend* v. *Norfolk Ry. Co.*, 105 Va. at p. 49, 52 S. E. 978, 115 Am. St. Rep. 842, 4 L. R. A. (N. S.) 87, "be a source of regret if, in the administration of justice by the establishment and enforcement of sound principles the prosperity of our people should be hindered or checked, but it would be not only a source of regret, but of reproach, if material prosperity were stimulated and encouraged by a refusal to give to any citizen a remedy for wrongs he may sustain, even though inflicted by forces which constitute factors in our material development and growth. Courts have no policies, and cannot permit consequences to influence their judgment further than to serve as warnings and incentives to thorough investigation and careful consideration of the causes submitted to them."

Upon the facts disclosed by the record we are of opinion that the use made of the stream by the appellant in casting sawdust into it was in violation of the rights of the appellees, and that the trial court did not err in enjoining the appellant from such use. The decree complained of must, therefore, be affirmed.

*Affirmed.*